IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARY L. McCLUNE, ) | |
| ) | |
| Plaintiff, ) | Cause No. 4:18-CV-00370 |
| ) | |
| vs. ) | |
| ) | Removed from Circuit |
| FARMERS INSURANCE COMPANY, ) | Court of Jackson County |
| INC. ) | Cause No. 1816-CV10500 |
| ) | |
| Defendants. ) | **JURY TRIAL DEMANDED** |

**DEFENDANT'S REPLY SUGGESTIONS IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Farmers Insurance Company, Inc. ("Farmers"), and for its Reply Suggestions in Support of Its Motion for Summary Judgment, states:

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………...2

INTRODUCTION……………………………………………………………………………...3

DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISUTED FACTS……………………………………………………………………….3

ARGUMENT…………………………………………………………………………………12

I.     FARMERS' EVALUATION WAS NOT COMPLETE BEFORE PLAINTIFF FILED SUIT……………..12

II.    PLAINTIFF'S RESPONSE FOCUSES ON PRODUCTION OF THE JUNE 2015 MRI, BUT THE ISSUE IS FAILURE TO PRODUCE A MAY 29, 2015, VISIT TO DR. EUBANKS-MENG BEFORE SHE FILED SUIT….15

CONCLUSION……………………………………………………………………………….18

CERTIFICATE OF SERVICE………………………………………………………………...19

# TABLE OF AUTHORITIES

*See, e.g., Chaudhri v. State Auto Prop. & Cas. Ins. Co.*, No. 4:17-CV-00703-DGK, 2019 WL 1519307 (W.D. Mo. Apr. 8, 2019)…………………………………………………………………..15

*Roller v. Am. Modern Home Ins. Co.*, 484 S.W.3d 110 (Mo. Ct. App. 2015)…………………………………………………………………………………………..15

*Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029 (E.D. Mo. 2001)………………………...15, 17

*Med. Protective Co. v. Bubenik*, 594 F.3d 1047 (8th Cir. 2010)…………………………………….16

*Meyers v. Smith*, 375 S.W.2d 9 (Mo.1964)……………………………………………………17

*Drennen v. Wren*, 416 S.W.2d 229 (Mo. App. 1967)…………………………………………….17

*Banks v. Dretke*, 540 U.S. 668,124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004)………………………17

## INTRODUCTION

Plaintiff's opposition suggestions primarily rely on two arguments, each of which are not supported by the undisputed facts: (1) Farmers completed its evaluation of Plaintiff's UIM claim before requesting an EUO, so it could not reasonable request an EUO (though Plaintiff does not cite to the insurance policy or any legal authority to support this proposition); and (2) Plaintiff provided a medical authorization in connection with her UIM claim, so Farmers cannot complain it did not receive her complete medical records. However, the undisputed facts show Farmers' overall evaluation was not complete before an EUO was requested, and a final decision never made on her claim. Further, the parties' conducted themselves as if Plaintiff would supply Farmers with her medical records. Plaintiff's reliance on the existence of a medical authorization (which was connected to her medical payments claim, not UIM claim) is merely a post-hoc justification for withholding some of her medical records. Overall, her conduct clearly violated her duty to cooperate because she almost immediately filed suit against Farmers after receiving a request for an EUO and additional documents, depriving Farmers' of its contractual right to her cooperation.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISUTED FACTS

101. On January 22, 2015, Plaintiff executed at Farmers' request an "Authorization For Release of Health Information" for 11 separate medical providers including but not limited to Dr. Kathleen Eubanks-Meng who requested the June 25, 2015 MRI of Plaintiff's left shoulder and Diagnostic Imaging where the MRI was performed [Ex. 5 – Plaintiff's Med Auth to Farmers at P000227-000234]

**Disputed as incomplete. This authorization was executed in connection with Plaintiff's claim for medical payments coverage (MPC), not for uninsured motorist coverage (UIM). (Ex. P, Deposition of Ken Kyle, 46:13 – 47:2; 57:7-13). Ken Kyle handled Plaintiff's**

UIM claim. The MPC and UIM claims are handled separately, and Mr. Kyle may not have even been able to access this authorization during his handling of Plaintiff's UIM claim. (Ex. P, at 45:1-21; 60:6-21; 65:11-14). Counsel for Plaintiff and Mr. Kyle had an established course of conduct in the handling of the UIM claim whereby Plaintiff's counsel would provide him copies of Plaintiff's medical records, as evidenced by the two instances where this occurred. (Exhibit F, at P000034; Exhibit G, at P000087). Later on, Farmers' counsel requested records related to the June 25, 2015, MRI be provided to Farmers by Plaintiff's counsel, consistent with this established course of conduct. (Exhibit M, at P000174-175). Plaintiff filed suit against Farmers rather than cooperate. (Exhibit N). Not once did Plaintiff respond to Mr. Kyle's requests for records by indicating that it should use the MPC authorization to obtain them. Farmers did not have Dr. Eubanks-Meng's records for the visit in which she ordered the June 2015 MRI until well after Plaintiff sued. (Exhibit H, First set of medical records provided by Plaintiff, P000356-407; Exhibit G, Additional Materials Requested by Farmers, P000118-159). The records contained in Exhibit 6 to Plaintiff's Response were obtained after Plaintiff sued.

102. Plaintiff agreed that, "This authorization shall remain valid for the duration of my claim." [Ex. 5 – Plaintiff's Med Auth to Farmers at P000230]

Undisputed but incomplete. Defendant incorporates its response to Plaintiff's SOAF 101. This authorization was used in connection with Plaintiff's MPC claim, not her UIM claim. Farmers paid Plaintiff's MPC claim on August 28, 2015. (*See* Exhibit P, at 89:3-12; Exhibit Q, attached hereto, Page from Claim Summary Report). The duration of Plaintiff's MPC claim was at an end as of that date. Plaintiff's first demand related to her UIM claim against Farmers occurred on June 29, 2016. (Exhibit C, Emails regarding settlement of

Plaintiff's claim against JoAnn Miller). As a result, in accordance with the authorization's language and 45 C.F.R. § 164.508(b)(2), the expiration event for the authorization had occurred before Plaintiffs submitted their first demand related to her UIM claim. Further, as shown in Defendants' response to Plaintiff's SOAF 101, Plaintiff's counsel had established a course of conduct in the UIM claim whereby Plaintiff would provide medical records and other documents to Farmers.

103. In response to Plaintiff's July 11, 2017 demand [Ex. F at P000033-35] Farmers' requested certain information on July 26, 2017. [Ex. G at P000090].

**Undisputed.**

104. Plaintiff thereupon advised Farmers it may take some time to collect all of the requested information as it was not in her possession. Ex. G at P000092-94.

**Disputed. The pages to which Plaintiff cites do not support this proposition. If she intended to refer to Ex. G, page P000088, then Farmers disputes this contention, as the communication did not state that Plaintiff did not have the requested materials in her possession, although it was implied. It is also significant that counsel for Plaintiff did not respond to Mr. Kyle by indicating that Farmers should be able to acquire the requested medical records with an authorization previously provided. It is undisputed that Plaintiff's counsel stated: "We will follow-up on your requests. Might be a 3-4 weeks as requested materials require us to deal with health care providers." (Ex. G, at P000088).**

105. Farmers' Ken Kyle responded "Andy, I understand how it is just get them to me when you can. Ken Kyle." [Ex. G at P000087-88].

**Undisputed. However, it is significant that neither Mr. Kyle nor counsel for Plaintiff indicated that Farmers should be able to acquire the requested medical records with an authorization previously provided.**

106. Plaintiff provided all documentation and information requested by Farmers on October 20, 2017 and on October 23, 2017 confirmed Farmers receipt so Farmers "*could complete its evaluation and pay Mary Lou's claim*." Ex. 3 at P000163-164 and Ex. G at P000087-162; Ex. 8, Kyle depo at 120:17-121:6.Ex. 8, Kyle depo at 120:17-121:6; Ex. 9.

**Disputed, incomplete and immaterial. Plaintiff's counsel's email of October 20, 2017, requested that Ken Kyle "let me know when we can expect Farmers to complete its evaluation and pay Mary Lou's claim." (Ex. 3, at P000164). Mr. Kyle responded that he would "review and get back with you within the next 2 weeks." (Ex. 3, at P000163). The documents cited in Exhibit G were provided by Plaintiff to Farmers, but it is disputed that these were a complete set Plaintiff's medical records. Specifically, Ken Kyle requested "copies of treatment records from Ms. McClune's primary care physician, Dr. Kathleen Eubanks-Meng." (Ex. G, at P000090). Mr. Kyle did not expressly limit this request to pre-accident records from Dr. Eubanks-Meng. (*Id.*). In fact, Plaintiff did not provide Farmers with Dr. Eubanks-Meng's records from May 29, 2015, and those items were obtained after Plaintiff sued Farmers. (Ex. G, at P000118-159; Ex. H, at P000399-404).**

107. On November 7, 2017, Kyle wrote Plaintiff to advise that Farmers had "completed [its] evaluation of Plaintiff's UIM claim as to both shoulder injuries after Plaintiff had supplied all requested information and documentation, without requesting an EUO.

> "This letter is to advise that we have completed the evaluation of your clients' [UIM] claim. We appreciate your patients and cooperation while we completed the review."

Case 4:18-cv-00370-HFS   Document 70   Filed 08/05/19   Page 6 of 19

6

Ex. I (emphasis supplied).

**Disputed as incomplete, and is immaterial in any event. Defendant incorporates its response to Plaintiff's SOAF 101 and 106. Plaintiff did not provide Farmers with a complete set of her medical records. Plaintiff's Response to Defendant's Motion for Summary Judgment asks the Court to take this statement out of context to conclude that, at this point, no additional investigation or evaluation could be done on Ms. McClune's claim. In fact, Mr. Kyle's communication specifically stated that "[b]ased on the information provided, we have determined the value of your client's claim to be $106,850," so Farmers offered $6,850 to resolve her UIM claim. (Exhibit I). Plaintiff responded on March 12, 2018, by demanding $450,000. (Exhibit K). This demand had a more adversarial tone, and at that point there was a "gigantic difference" in the valuation of the claim, making it clear that Farmers needed to "make sure that [it] had all the information," needed to "get assistance with the evaluation," and to "make sure [it] got everything [it] need[ed] to make a final determination." (Ex. P, at 139:3 – 141:3). In fact, Plaintiff's EUO was necessary to make a "final decision" on her claim. (Ex. P., at 130:5-17; 137:24 – 138:11; 140:21 – 141:3).**

108. On March 12, 2018 Plaintiff rejected Farmers' settlement offer of $6,850.00, explained why Farmers was now exposed to liability for vexatious refusal to pay Plaintiff's claim, but nonetheless reduced her demand to settle her claim to $450,000.00, which would remain open for 15 days or through the end of March 27, 2018. [Ex. K]

**Disputed. The March 12, 2018, letter did not state that Farmers "was now exposed to liability for vexatious refusal to pay Plaintiff's claim." (Ex. K).**

109. On March 14, 2018, Farmers acknowledged Plaintiff's March 12, 2018 demand and confirmed it would respond within two weeks or by March 28, 2018 [Ex. L at P000171].

**Disputed as misleading, and otherwise immaterial. Farmers' March 14, 2018, letter indicating that it would be "referring the claim to counsel for assistance in evaluating and responding to the demand." The letter said "You *should* be contacted by our counsel within the next two weeks." (Ex. L) (emphasis added). This was not a promise that Farmers would respond to the demand within two weeks, but rather a clear indication that more evaluation with the assistance of counsel would be necessary. Counsel for plaintiff surely understands that it takes to time to run a conflicts check and become familiar with a file. Farmers' response to the demand was that it was not "able to accept or reject the demand at this time." (Ex. L). In context, it is clear that Farmers immediately signaled that additional investigation would be forthcoming with the assistance of counsel. Indeed, Plaintiff does not dispute that her counsel received Farmers' counsel's request for additional information and an EUO *before* she filed suit. (*See* ECF No. 69, Plaintiff's Response, at 17-18, SOF 29 and 30). Thus, the supposed tardiness of the April 17, 2018, letter seeking additional information and an EUO is immaterial.**

110. Farmers did not respond by March 28, 2018, as Kyle represented it would.

**Disputed as misleading and/or incomplete. Defendant incorporates its response to Plaintiff's SOAF 109.**

111. Rather, Farmers responded by its lawyer's April 17, 2018 letter falsely claiming that Plaintiff had not provided records of the June 2015 MRI, and Dr. MacMillan's report, Ex. M at P000175, both of which had been provided to farmers on October 20, 2017, receipt confirmed so Farmers "*could complete its evaluation and pay Mary Lou's claim.*". Ex. G, at P000087, P00093-P00094); Ex. 8, Kyle depo at 120:17-121:6).

**Disputed. Defendant incorporates its responses to SOAF 106, 107 and 109. At the point of April 17, 2018, Farmers' counsel divined that "Ms. McClune did not submit all of her medical records pertaining to the left shoulder..." (Ex. M, at P000174). Specifically Farmers' counsel noted records related to the June 2015 MRI were missing. As noted above, Plaintiff did not provide Farmers with the May 29, 2015, visit to Dr. Eubanks-Meng prior to filing suit. Plaintiff's contention implies that Farmers' counsel should have been able to exactly pinpoint what Plaintiff had not provided to Farmers in its evaluation of the claim, though she has a duty to cooperate with Farmers under the policy.**

112. Farmers also then requested Plaintiff execute another medical authorization, Ex. M, although Farmers' still had the valid authorization Plaintiff provided to Farmers on January 22, 2015 for 11 separate medical providers including but not limited to Dr. Kathleen Eubanks-Meng who requested the June 25, 2015 MRI of Plaintiff's left shoulder, Diagnostic Imaging where that MRI was performed and Dr. Krirk McCullough and his practice group Orthopedic Sports Medicine of KC [Ex. 5 – Plaintiff's Med Auth to Farmers at P000227-000234].

**Disputed as incomplete, misleading, and also immaterial. Defendant incorporates its responses to Plaintiff's SOAF 101, 102, and 106.**

113. Farmers also then proposed to take Plaintiff's examination under oath at some unspecified point in the future after it collected these medical records again, and submitted them to an expert for review, despite the fact that Farmers had completed its evaluation of Plaintiff's claim seven months earlier. Ex. M.

**It is undisputed that Farmers requested to take Plaintiff's examination under oath. It is undisputed that Farmers indicated it would provide Plaintiff's medical records to an expert for an opinion. (Ex. M). The remainder of this contention is disputed due to being**

incomplete and argumentative. Plaintiff did not respond to Farmers' request by cooperating. Had Plaintiff responded by indicating she would not provide records previously provided, Farmers would have made no objection. Instead, it is undisputed that Plaintiff sued rather than responding. As was required by the circumstances, Farmers requested additional information to evaluate the claim, and Farmers was not provided important records before suit was filed. Farmers' evaluation was not complete. Defendant incorporates its responses to Plaintiff's SOAF 101, 106, and 107.

114. Farmers did not talk with JoAnn Miller until approximately one month before her deposition in this case on May 22, 2019. [Ex. P – Kyle depo at pgs. 73-74 and Ex. 1 – Depo of Joann Miller (at fault driver) at pgs. 41, 44-47].

**Undisputed, but immaterial. Plaintiff sued Farmers before its evaluation could be completed.**

115. Farmers' never interviewed the police officer who took the accident report. [Ex. P – Kyle depo at pgs. 72-74].

**Undisputed but incomplete, and also immaterial. As Ken Kyle testified, in his experience, the police report generally contains the extent of what the officer learned, and the officer was not present at the scene anyway. (Ex, P, 73:11 – 75:2).**

116. Farmers did not talk to any QuikTrip employees. [Ex. P – Kyle depo at pg. 73].

**Undisputed but incomplete, and also immaterial. The police report suggests no QuikTrip employees witnessed the incident and states no cameras cover the area in question. (Ex. R, Police Report)**

117. Farmers never used the authorization that Mary Loui McClune executed on or about January 22, 2015 at Farmers' request [Ex. P – Kyle depo at pg. 79-80].

10

Case 4:18-cv-00370-HFS   Document 70   Filed 08/05/19   Page 10 of 19

**Undisputed but incomplete and misleading. Defendant incorporates its responses to Plaintiff's SOAF 101, 102, 104, and 105.**

118. Plaintiff's first complaint about left shoulder pain to Dr. Eubanks-Meng occurred on May 29, 2015 when Plaintiff's "Chief Complaint" was "left shoulder pain..." that "developed several weeks ago. The discomfort is currently 6/10 intensity and waxes and wanes in severity...". "...She has a prior history for rotator cuff repair to the opposite shoulder and feels like this is the same type of pain." [Ex. 6 – Records of Dr. Kathleen Eubanks-Meng – Clay Platte Family Clinic at McClune0413-419].

**Undisputed that the quoted records so state. Undisputed that this is the earliest medical record known to Farmers relating to Plaintiff's complaints of left shoulder pain. The records also state that Plaintiff presented "for evaluation of a 3 day history of left shoulder pain..." (Ex. 6, at MCCLUNE0413).**

119. Plaintiff's left shoulder pain later increased, her range of motion decreased and Dr. Eubanks Meng diagnosed "...Rotator Cuff syndrome of shoulder...Impingement syndrome of the shoulder..." and ordered an MRI of McClune's left shoulder [Ex. 6 – Records of Dr. Kathleen Eubanks-Meng – Clay Platte Family Clinic at McClune 0423, 0427].

**Undisputed that the quoted records so state, but the quoted records do not provide full context. It is notable these records also state that "she has completed physical therapy and had one steroid injection into the joint." (Ex. 6, at MCCLUNE0423). To Farmers knowledge, it has not been provided with records related to physical therapy or steroid injections for the left shoulder prior to June 19, 2015, or an authorization to obtain them. Also, on October 29, 2015, Plaintiff's orthopedic specialist, Dr. McCullough, found "[n]o appreciable rotator cuff tearing" in the June 2015 MRI. (Ex. F, at P000050).**

120. On June 25, 2015, an MRI of Plaintiff's left shoulder showed the presence of effusion [fluid] in the subacromial bursa and suggested a partial tear of the supraspinatus tendon of McClune's left rotator cuff. [Ex. G at P000093-94, 97, 100; Ex. 4 Depo at pg. 128:15-25; 130:24-135:21].

**Disputed. Plaintiff's own expert admitted he is drawing inferences about the presence of fluid, and that the MRI report does <u>not</u> affirmatively state that a rotator cuff tear is present. (Ex. S, Additional pages of Dr. MacMillon Depo, at 138:5-11). Dr. MacMillan also admitted that a rotator cuff tear is not the only way fluid gets into the subacromial space. (Ex. S, at 137:22-24). The radiologist reading the 2015 MRI did not mention a "tear" anywhere in the "impression" section of the report. (Ex. S, at 141:24 – 142:1). That same radiologist read a previous MRI of Plaintiff's right shoulder, and clearly made affirmative statements about the presence of a rotator cuff tear. (Ex. S, at 142:2-25). Also, on October 29, 2015, Plaintiff's orthopedic specialist, Dr. McCullough, found "[n]o appreciable rotator cuff tearing" in the June 2015 MRI. (Ex. F, at P000050). Pre-suit, there were issues surrounding the left shoulder condition that merited further evaluation and an EUO. (Ex. P., at 141:17 – 142:1).**

## ARGUMENT

### I. FARMERS' EVALUATION WAS NOT COMPLETE BEFORE PLAINTIFF FILED SUIT.

Plaintiff argues that Farmers "completed its evaluation of Plaintiff's claim without even requesting an EUO." (Doc 69, at 32). Plaintiff relies on one cherry-picked statement in Mr. Kyle's letter of November 7, 2017, for this proposition. The complete record contradicts Plaintiff's contention. Plaintiff's argument also relies on the premise that Farmers' EUO request first arrived

in April 2018, giving the misleading impression that Farmers was tardy in making this request. An analysis of the undisputed timeline disproves these misimpressions:

- June 29, 2016 – Plaintiff's first demand for $400,000 for settlement of her UIM claim.
- July 5, 2016 (6 days later) – Farmers responds with its first offer.
- July 11, 2017 (over one year later) – Plaintiff responds with another demand for $500,000, for the first time suggesting she has left shoulder issues.
- July 26, 2017 (15 days later) – Farmers responds requesting more information.
- October 20, 2017 (slightly less than 3 months later) – Plaintiff provides additional information, but does not provide the May 29, 2015, visit with Dr. Eubanks-Meng.
- November 7, 2017 (18 days later) – Farmers responds with its second offer, which was "[b]ased on the information provided."
- February 26, 2018 – Farmers follows up on its November 7 letter due to lack of response.
- March 12, 2018 (slightly less than 4 months after November 7) – Plaintiff responds to Farmers' second offer with more adversarial language and demanding $450,000. At this point, Mr. Kyle believed he needed to "get assistance with the evaluation" and to "make sure [he] had all the information." He was also concerned about the "gigantic difference" in the parties' valuation of the claim.
- March 14, 2018 (2 days later) – Consistent with Mr. Kyle's testimony about needing to investigate further, Farmers responds, saying it cannot accept or reject this demand, and that it would be "referring the claim to counsel for assistance in evaluating and responding to the demand." Farmers clearly communicated to Plaintiff that more evaluation was necessary in light of the "gigantic difference" between the parties.

- April 17, 2018 (slightly over one month later) – consistent with Farmers' previous correspondence, Farmers' counsel sends a letter requesting complete medical documentation and an EUO. Farmers' counsel makes clear it intends to ask for a medical expert's assistance on this matter. Farmers' counsel requests Plaintiff's counsel contact him to "set a mutually agreeable time" for the examination under oath, rather than unilaterally scheduling the event. (Ex. M)
- April 23, 2018, 12:27 PM – Plaintiff's counsel unquestionably received and reviewed the request for more documentation and an EUO. (Ex. M)
- April 23, 2018, 4:08 PM – Plaintiff filed suit against Farmers. (Ex. N)
- April 24, 2018 – Plaintiff's counsel sent a letter claiming to have filed suit *after* receiving Farmers' requests for her cooperation and an EUO, despite clear evidence to the contrary. In this letter, Plaintiff refuses to submit to an EUO or provide additional documentation.

Prejudice to Farmers and Farmers' diligence in seeking Plaintiff's compliance are demonstrated by these facts and the undisputed timeline. Overall, the total time period between Plaintiff's communications and Farmers' responses amounted to only around 75 days (if you include the 34 days when Farmers' counsel got up to speed and requested the EUO and additional documents, which followed a response two days after that demand saying the demand could not be accepted or rejected in light of the need for further evaluation). However, the total delay between Farmers' communications and Plaintiff's responses to those communications amounted to approximately 1 year and 7 months.

Thus, the record as a whole is clear. On November 7, 2017, Mr. Kyle felt comfortable making an offer based on what he knew at that time. Circumstances changed on March 12, 2018, due to the "gigantic difference" in the parties' valuation. Mr. Kyle clearly communicated that
14

more investigation, with the assistance of counsel, was required. Plaintiff cites to no authority or policy language to support the contention that Farmers could not continue its investigation and evaluation after this time, and certainly no authority that justifies her filing suit immediately after getting the request for her EUO.

The inescapable truth is that Plaintiff *sued Farmers almost immediately after her EUO was requested*, although her counsel *knew* of the request and then represented, despite contrary evidence, that he filed suit *before* receiving that letter. This deprived Farmers of the ability to fully evaluate and make a final determination on the claim. (Ex. P., at 130:5-17; 137:24 – 138:11; 140:21 – 141:3). "This failure to comply denied [Farmers] the opportunity to complete its investigation," which is "prejudicial as matter of law." *Chaudhri v. State Auto Prop. & Cas. Ins. Co.*, No. 4:17-CV-00703-DGK, 2019 WL 1519307, at *3 (W.D. Mo. Apr. 8, 2019) (granting summary judgment). *See also Roller v. Am. Modern Home Ins. Co.*, 484 S.W.3d 110, 117 (Mo. Ct. App. 2015) (granting summary judgment); *Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029, 1032 (E.D. Mo. 2001) (granting summary judgment).

Plaintiff denied Farmers its right to ensure it had all the records related to her left shoulder condition (which it did not), to take her EUO and assess the facts of the accident and her left shoulder condition, and to get assistance from a medical expert in evaluating and making a decision on her claim. In other words, Farmers was prejudicially deprived of its contractual right to Plaintiff's cooperation in the claim investigation, despite its attempts to secure such cooperation.

## II. PLAINTIFF'S RESPONSE FOCUSES ON PRODUCTION OF THE JUNE 2015 MRI, BUT THE ISSUE IS FAILURE TO PRODUCE A MAY 29, 2015, VISIT TO DR. EUBANKS-MENG BEFORE SHE SUED.

Farmers contends that Plaintiff's visit to Dr. Eubanks-Meng in which she ordered the June 2015 MRI was not produced before she sued. Chasing windmills, Plaintiff's response focuses on

whether the June 2015 MRI itself was produced pre-suit. (*See* Doc 69, at 28-29, 32). In reality, Farmers' argument is based on the fact that Dr. Eubanks-Meng's medical records from May 29, 2015, attached by Plaintiff in Exhibit 6 to her response, were not produced pre-suit. Plaintiff has not supplied any facts that dispute this contention. In fact, she has also pointed out additional physical therapy and steroid injection records that Farmers, even today, has not received. (*See* Exhibit 6, at MCCLUNE 0423).

Plaintiff also argues that Mr. Kyle should have obtained these records with an authorization she provided in connection with the handling of her MPC claim. But there is no dispute that the MPC and UIM claims are handled separately. There is no dispute that her MPC claim was settled as early as August of 2015, well before she even made her first UIM demand to Farmers. Finally, the summary judgment record clearly shows that Plaintiff's counsel and Ken Kyle established a course of conduct whereby Plaintiff would supply him the records. Not once did Plaintiff's counsel suggest Mr. Kyle use an authorization to obtain the records instead of requesting the Plaintiff provide them.[1]

It was incumbent on Plaintiff to insist that Mr. Kyle use that authorization to satisfy her cooperation duties. The applicable policy contains a general requirement that Plaintiff "[c]ooperate with us an assist us in any matter concerning a claim or suit." (*See* Ex. O, at FARMERS 00010). Provisions like this require cooperation in "a multitude of matters other than those specified in the policy ... depending upon the particular facts in the particular case." *Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1052 (8th Cir. 2010) (quoting Missouri Sup. Ct. in

---

[1] In any event, under 45 C.F.R. § 164.508(b)(2), the authorization had expired when the MPC claim was settled, so the authorization was not valid for almost a year before Plaintiff first submitted her demand related to her UIM claim to Farmers. *See* response to SOAF 102.

*Meyers v. Smith*, 375 S.W.2d 9, 15 (Mo.1964)). In other words, a general cooperation clause requires considerations of "common sense" to assess what is required. *See id.*

Such common sense cooperation in this context would include, for example: (1) communicating with Mr. Kyle that he should use an authorization rather than request records from the Plaintiff in light of previously established course of conduct; (2) providing Farmers all records related to the critical June 2015 MRI, including the May 29, 2015, visit where Dr. Eubanks-Meng's requested it; (3) submitting to an EUO and providing additional documents once Farmers' counsel requested them, or at least communicating with Farmers' counsel if it was believed the request could be more narrowly tailored in the circumstances *rather than immediately filing suit*; and/or (4) refraining from immediately filing suit and then claiming Farmers' request for an EUO and additional documentation was not received before suit was filed, despite clear evidence to the contrary. After all, truthfulness is the "keystone" of cooperation. *Drennen v. Wren*, 416 S.W.2d 229, 233 (Mo. App. 1967).

The issue of cooperation in the insurance context is akin to a prosecutor's duty to disclose exculpatory evidence. In that context, Justice Ginsburg stated for the Supreme Court: "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696, 124 S. Ct. 1256, 1275, 157 L. Ed. 2d 1166 (2004). So it is here. Cooperation provisions are designed to "enable the [insurance] company to possess itself of all knowledge, and all information as to other sources of knowledge, in regard to facts, material to their rights, to enable them to decide upon their obligations…" *Wiles*, 215 F.Supp.2d at 1032. Allowing a situation where "insured may hide, Farmers must seek" is not tenable in a system that requires the insured's cooperation.

## CONCLUSION

Overall, Plaintiff's non-cooperation went to the heart of the matter by denying Farmers the ability to fully investigate her left shoulder complaints, complete its evaluation, and render a final decision on the claim. Contrary to Plaintiff's assertions, the undisputed timeline clearly shows that Farmers was diligent in seeking her cooperation. She responded by suing Farmers almost immediately after Farmers requested her EUO, and her counsel represented he had not received Farmers' request before filing suit, which has now been abandoned as an excuse for non-compliance with the policy conditions. In other words, Farmers had no opportunity to make more than one request for an EUO. This is the quintessential case of non-cooperation, and merits summary judgment for Farmers.

Respectfully submitted,

**BROWN & JAMES, P.C.**

/s/ Timothy J. Wolf
Timothy J. Wolf, #53099
Benjamin S. McIntosh, #68248
800 Market Street, 11th Floor
St. Louis, MO 63101-2501
314-421-3400
314-421-3128 - FAX
twolf@bjpc.com
*Attorney for Defendant Farmers Insurance Company, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was sent via the Court's electronic filing system this 5th day of August, 2019, to:

Andrew H. McCue
Louis C. Accurso
The Accurso Law Firm
4646 Roanoke Parkway
Kansas City, MO 64112
amccue@accursolaw.com
laccurso@accursolaw.com
*Attorneys for Plaintiff*

Michael L. Wilson
Wilson Law Firm
6247 Brookside Blvd., Suite 226
Kansas City, MO 64113
mlwilson@kc.rr.com
*Attorneys for Plaintiff*

#21270705.1

/s/ Timothy J. Wolf