UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARY L. McCLUNE, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:18-CV-00370 - HFS |
| | ) |
| vs. | ) |
| | ) |
| FARMERS INSURANCE COMPANY, INC. | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Presently pending before the court are plaintiff's motions to compel (Doc. 37) and for leave to file supplemental suggestions in support of her motion (Doc 47). Also pending is a motion for summary judgment filed by defendant, Farmers Insurance , Inc. (Doc. 59) and plaintiff's cross-motion for summary judgment (Doc. 71).

Background

Plaintiff alleges that she sustained bodily injury when another driver, JoAnn Miller, negligently collided with her vehicle in the parking lot of a QuickTrip gas station on August 16, 2014. (State Court Petition: ¶¶ 5-6). At that time, plaintiff claims she was insured under a policy with Farmers for medical coverage in the

1

amount of $5000 per person, and underinsured motorist (UIM) coverage subject to a limit of $500,000 per person. (Id: ¶ 4; Plaintiff's SUMF: ¶ 2). Ms. Miller's liability coverage was insured by State Farm for $100,000. (Plaintiff's SUMF: ¶ 5). In December of 2014, plaintiff initially sought payment for medical costs under her policy. (Id: ¶ 6).

Upon request, on January 22, 2015, plaintiff provided Farmers a signed medical authorization and a list of her healthcare providers, which included documentation from orthopedic specialist, Dr. McCullough, who surgically repaired plaintiff's right rotator cuff. (Id: ¶ 13).

Plaintiff alleges that in June of 2016, she received consent from Farmers to accept settlement from Ms. Miller's liability coverage with State Farm in the amount of $100,000. (Petition: ¶¶ 10-12; Plaintiff's SUMF: ¶14). On or around June 29, 2016, plaintiff made a demand to Farmers in the amount of $400,000 to resolve her UIM claim based on the right shoulder injury. (Plaintiff's SUMF: ¶ 16). By letter dated July 5, 2016, Farmers offered plaintiff $2,500 in settlement of her UIM claim. (Id: ¶ 17).

In May of 2017, plaintiff was examined by Dr. Jeffrey MacMillan for what plaintiff alleges was a left rotator cuff sustained from overuse of her left shoulder while her right shoulder healed from the accident. (Id: ¶¶ 19-20). On July 11,

2017, plaintiff's counsel sent a letter to defense counsel stating that plaintiff now demanded $500,000 to settle the UIM claim due to injuries sustained to both shoulders as a result of the accident. (Id: ¶ 21). By letter dated July 26, 2017, Farmers requested copies of the report and bill for the MRI performed on June 25, 2015 on plaintiff's left shoulder; the bill for the MRI performed on plaintiff's left shoulder on August 24, 2016; treatment records of plaintiff's treating physician, Dr. Kathleen Eubanks; and the report of Dr. MacMillan confirming that overuse of the left upper extremity directly resulted from injury to the right shoulder and contributed to the full thickness tear of the left rotator cuff. (Id: ¶ 22).

By email dated October 20, 2017, plaintiff states that the requested material was sent, and by email dated October 23, 2017, Farmers, through its representative Kenneth Kyle, acknowledged receipt of the documents. (Id: ¶¶ 26-27). By letter dated November 7, 2017, Farmers stated that evaluation of plaintiff's UIM claim was completed and determined the value of the claim to be $106,850; after deducting the $100,000 settlement received by plaintiff from Ms. Miller's insurance, Farmers offered plaintiff $6,850. (Id: ¶¶ 29-30). By letter dated March 12, 2018, plaintiff rejected the offer, but reduced her settlement demand

3

to $450,000 – a demand which would remain open through March 28, 2018. (Id: ¶ 32).

By letter dated March 14, 2018, Farmers acknowledged receipt of the $450,000 demand, and without accepting or rejecting it, advised plaintiff that the claim would be referred to counsel for assistance with evaluation and a response, and that plaintiff would be contacted by counsel within two weeks. (Id: ¶ 33).

By letter dated April 17, 2018, defense counsel requested, preparatory to "an examination under oath," the following documents, "to the extent not previously provided":

- All medical records and bills relating to evaluation or treatment of injuries alleged to be sustained from the accident on August 16, 2016;
- All medical records and bills related to the evaluation or treatment of plaintiff's left and right shoulders, before and after the Aug. 2016 accident;
- All documentation related to claims of lost income/wages (Defendant's Mot. Summ. Judg., Exh. M)

A medical authorization for each medical provider was included with the letter, and defense counsel specifically requested the medical records of orthopedist Dr. McCullough who performed surgery on plaintiff's right rotator cuff and records of an MRI performed in June of 2015. (Id). Defense counsel also requested reports of orthopedist Dr. MacMillan's opinion regarding the condition of plaintiff's left shoulder. (Id). Defense counsel noted that the requested medical

documentation would be reviewed by its medical expert, to be followed by a mutually agreed time for plaintiff's examination under oath. (Id).

Plaintiff refused to comply with the request, and, before Farmers rendered a decision on the UIM claim, on April 23, 2018, commenced suit against Farmers in state court asserting claims for breach of contract and vexatious refusal to pay. On May 16, 2018, Farmers removed the action to this court asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Standard of Review

Because this is a diversity case, state substantive law and federal procedural law is applied. Russo v. Frasure, 371 F.Supp.3d 586, 589 (E.D.Mo. 2018); citing, Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). When a federal court sits in diversity, it must apply the governing precedent from the state's highest court, and when there is no case directly on point, the federal court must predict how the state supreme court would rule if faced with the same question. Russo, at 589; citing, Jordan v. Safeco Ins. Co. of Ill., 741 F.3d 882, 887 (8TH Cir. 2014). Because the court sits in diversity, Missouri law governs. Russo, at 589. Thus, though bound by the decisions of the Missouri Supreme Court regarding issues of substantive law, decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but the court is not

bound to follow these decisions. Russo, at 589-90; citing, Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1068 (8th Cir. 1995); see also, Nunnally v. Stillwater Insurance Company, 406 F.Supp.3d 765, 770 (E.D.Mo. 2019) (where no Missouri Supreme Court precedent exists on an issue, a federal court predicts what the Missouri Supreme Court would decide and considers intermediate appellate court decisions in that process).

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Russo, at 590; citing, Fed.R.Civ.P. 56(a). The burden is on the moving party and the movant bears the initial responsibility of informing the district court of the basis for its motion and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Id. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. Id.

Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact. Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 941 (S.D. Iowa 2007). The mere existence of some

alleged factual dispute between the parties will not defeat a motion for summary judgment; there must be no genuine issue of material fact. Id.

Here, cross-motions for summary judgment have been filed, which does not mean the parties have waived their right to trial. Id, at 942. Rather, for the purposes of summary judgment, a party concedes there are no factual issues and accepts the other party's allegations only for the purpose of their own motion. Id. Cross motions simply require a court to determine whether either party deserves judgment as a matter of law on facts that are not disputed. Id.

## Discussion

As noted above, plaintiff commenced suit asserting claims for breach of contract and vexatious refusal to pay. Plaintiff contends that she is entitled to summary judgment as a matter of law because she fully cooperated with all document requests, but Farmers refused to pay UIM benefits to her in contravention of the insurance policy. Plaintiff's central contention is that "Farmers did not request an EUO (examination under oath) until five months after it completed its evaluation of plaintiff's UIM claim." (Doc. 59, p.2). This relies on Farmers' representative Kyle's letter of November 7, 2017, stating, in pertinent part, that "we have completed the evaluation of the claim" and that "Based on

7

the information provided, we have determined the value of your client's claim" and "can offer $6,850 to resolve the claim." (Doc. 59 , Exh. I).

To recover for breach of contract, a party must show its own substantial compliance with the contract. Higman v. State Farm Fire and Casualty Company, 2014 WL 12452473 * 3 (W.D.Ark.). Under Missouri law, cooperation clauses are valid and enforceable. Id; citing, Parsons v. Amica Mut. Ins. Co., 2012 WL 5362262 (W.D.Mo.).[1] "An insured must perform the conditions of the contract upon which an insurer's liability depends, and … the insured's unexcused failure to cooperate in a substantially material respect releases the insurer from liability." Id; quoting, Quisenberry v. Kartsonis, 297 S.W.2d 450, 453 (Mo. 1956). However, an insurer must prove the existence of substantial prejudice and then exercise of reasonable diligence to secure the insured's cooperation before it can deny coverage because of the breach of the cooperation clause. Id.

The relevant provisions of the Cooperation Clause in this case are as follows:

- Cooperate with us and assist us in any matter concerning a claim or suit;

- Submit to physical examinations at our expense by doctors we select as often as we may reasonably require;

- Authorize us to obtain medical and other records;

---

[1] Relying on, Riffe v. Peeler, 684 S.W.2d 539, 542 (Mo.Ct.App. 1984).

- Submit to examination under oath (EUO) upon our request
(Farmer's Mot. Summ. Judg., Exh. O, pg. 00009).

In support of her claim of full cooperation, plaintiff points to the medical authorization she provided to Farmers on January 6, 2015 (Plaintiff's Mot. Summ. Judg., Exh. 3); as well as additional copies of specific medical records subsequently requested by State Farm representative, Kenneth Kyle, who acknowledged receipt in his letter of July 26, 2017. (Id: Exh. 8). In this letter, Kyle advised that he had completed a review of the additional documents plaintiff sent, and would need further documents "in order to finalize the evaluation of the claim; documents consisting of:

- Copies of the report and associated bill regarding the MRI performed on Plaintiff's left shoulder on 10/29/15

- The bill associated with the MRI performed on plaintiff's left shoulder On 8/24/16

- Treatment records from primary care physician, Dr. Kathleen Eubank-Meng ("to confirm the shoulder problems did not pre-date the 8/16/14 Accident.")

- Reports and or records from Dr. Jeff MacMillan who examined plaintiff on May 24, 2017, and opined that overuse of the left upper extremity directly resulted from the injury to the right shoulder (Id: Exh. 8).

Through email communications dated July 26, 2017, the parties agreed that it would take some time for plaintiff to gather the documents requested. (Id: Exh. 9). On October 20, 2017, Farmers acknowledged receipt of the documents. (Id: Exh. 11). In further support of plaintiff's argument, she points to Kyle's deposition testimony, that upon receipt of the additional documents, he spoke with his supervisor in October of 2017[2], and a decision was made to complete the evaluation and make an offer. (Id: ¶ 28).

Plaintiff contends that after submitting the requested documents, by letter dated November 7, 2017, Farmers stated that evaluation of the UIM claim was completed, and is legally precluded from further investigation, thereby terminating the duty to cooperate. Thus, on April 17, 2018, when Farmers requested additional medical records and that she submit to an EUO, plaintiff refused to comply and commenced the instant action before Farmers rendered a decision on her claim.

Plaintiff contends that her refusal, *post-investigation*, was justified and Famers failed to exercise reasonable diligence to secure her compliance prior to completing its investigation. In reliance on <u>Brown v. State Farm Mut. Auto Ins.</u>

---

[2] The parties state the year as "2018," but this date is contrary to the timeline of events as recited by the parties in their briefing.

Co., 776 S.W.2d 384, 386 (Mo. banc 1989), plaintiff claims Farmers is now estopped from asserting the defense of breach of cooperation clause.

Conversely, Farmers argues that its request for plaintiff to submit to an EUO was timely. There is no dispute that after the Nov. 2017 settlement offer, Farmers reached out to plaintiff by letter dated February 12, 2018, to inquire about the potential of a counter-demand. (Farmers' Mot. Summ. Judg., SUMF: ¶ 21, Exh. J); and by letter dated March 12, 2018, plaintiff made a counter-demand of $450,000. (Id, SUMF: ¶22, Exh. K). Farmers then advised plaintiff by letter dated March 14, 2018, that it was unable to accept or reject plaintiff's counter-demand at that time and would refer the claim to its counsel for assistance with evaluation and a response to the counter-demand. (Id, SUMF: ¶ 27, Exh. L). By letter dated April 17, 2018, Farmers advised that based on plaintiff's counter-demand, it would now require various records preparatory to an EUO.

By letter dated April 24, 2018, plaintiff's counsel advised that suit had been commenced due to Farmers' breach of the insurance policy – based on unreasonable refusal to pay the UIM claim- and, therefore, plaintiff was no longer obligated to provide the requested documents, unless in accordance with the rules of civil procedure. (Id: Exh. N).

In answer to the claims alleged by plaintiff in her Petition, Farmers asserted, among other things, that by failing to comply with requests made pursuant to the Cooperation Clause, plaintiff was in breach and forfeited her right to coverage under the Policy. (Doc. 11, ¶¶ C-D). The question here is whether, prior to the commencement of this action, Farmers' investigation of the UIM claim was irrevocably completed, or whether plaintiff's subsequent refusal to submit to an EUO and provide additional treatment records demonstrates a failure to fully cooperate.

Insurance policy cooperation clauses are valid and enforceable under Missouri law. <u>Chaudhri</u>, 2019 WL 1519307, at *3; <u>citing</u>, <u>Med. Protective Co. v. Bubenik</u>, 594 F.3d 1047, 1051 (8th Cir. 2010). Cooperation clauses are designed to enable the insurance company to possess itself of all knowledge, and all information as to other sources of knowledge, in regard to facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. <u>Id</u>; <u>citing</u>, <u>Wiles v. Capitol Indem. Corp.</u>, 215 F.Supp.2d 1029, 1032 (E.D.Mo. 2001). To deny liability coverage under such a provision, an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation. <u>Id</u>.

Farmers argues that the investigation was not "officially" or irrevocably closed on November 7, 2017, given that completion was based on the information possessed at that time, and on subsequent communication between the parties it realized during the early months of the following year that additional documentation would be needed to assess a claim of the size plaintiff purported. Farmers also notes, and plaintiff does not dispute, that nothing in the insurance policy precluded it from reconsideration of plaintiff's claim based on the significant disparity in their respective valuations of the claim.

It has been held that the failure to appear for an EUO is a material breach of the cooperation clause. Wiles, 215 F.Supp.2d at 1031; see also, Chaudhri, 2019 WL 1519307, at * 3. Further, and notwithstanding plaintiff's contention that the investigation was complete because Farmers so stated in the Nov. 7, 2017 letter, it is undisputed that the parties continued settlement negotiations after that time and when Farmers concluded it could use additional medical information – some of which was previously provided, and some of which was not – Farmers requested that plaintiff sit for an EUO at a mutually agreed upon date. Plaintiff's contention that the request was untimely is unpersuasive and is supported by no authority. Rather the claim is essentially of an irrevocable waiver or estoppel to reopen the investigation.

By commencing this action on the Policy without submitting to an EUO, plaintiff denied Farmers the opportunity both to complete the reopened investigation and to make a new ruling on the claim. Wiles, at 1032. Such a denial has been held to be clearly prejudicial. Id; see also, Roller v. American Modern Home Insurance Co., 484 S.W.3d 110, 116 (Mo.App. W.D. 2015)(if an insured willfully and without excuse refuses discovery, an insurer may refuse to go forward with an adjustment and claim immunity from suit).

Despite the claimed legal bar based on the "completed" evaluation of November 7, 2017, Farmers was acting under its policy rights in seeking additional medical records and an EUO.[3] And, plaintiff's failure to comply with this request – made during continuing negotiations – was prejudicial to Farmers. CM Vantage Specialty Insurance Company v. Nephrite Fund 1, LLC, 2020 WL 805848 *13 (E.D.Mo.); see also, State Farm Fire & Casualty Co. v. Rogers, 2020 WL 877815 (W.D.Mo.).

As to plaintiff's waiver and estoppel arguments, no support may be found in Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384 (Mo. 1989)(en banc). In Brown, the court found that the rationale advanced by State Farm in its answer

---

[3] Under Mississippi law it has been held that an insurer has a continuing duty to reevaluate, even after suit is filed. Broussard v. State Farm Fire & Cas. Co., 523 F.3d 618, 629 (5th Cir. 2008). On the supposition that the right and duty to re-evaluate is a routine aspect of insurance law and practice, the insured would surely have a comparable duty of continuing cooperation with renewed investigation under the Cooperation Clause.

to the petition was not inconsistent with the denial in its letter. Id, at 389. Further, the court found that it could not be reasonably said that the plaintiff relied to her detriment on the general denial contained in the denial letter. Id; see also, Sauvain v. Acceptance Indem. Ins. Co., 339 S.W.3d 555, 560 (Mo. App. 2011)(an examination of the cases shows estoppel, with some element of unfairness, lack of notice, or other detriment to the insured ….).[4]

    As noted in Brown, the conduct to support a waiver " 'must clearly and unequivocally show a purpose to relinquish' " a known right. Id. at 387-7. In this case, the insurer's representative, while making a rather modest offer, simply advised that evaluation had been "completed." Insofar as the statement was pertinent to the offer, it gave assurance that the offer was based on investigation. There was nothing said that would relinquish a right to reopen investigation or seek a second opinion (as occurred here) when the response by plaintiff was drastically at issue with defendant's offer. Plaintiff's demand implicitly invited defendant to reconsider, which not unreasonably would include further investigation. In any event, there was no suggestion of a "clear" or "unequivocal" relinquishment or abandonment of the critical need for investigating the

---

[4] Estoppel requires (1) an admission, statement or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act. Sauvain, 339 S.W.3d, at 561.

15

underlying strength of the claim. Plaintiff offers no precedent for her waiver claim, either in Missouri or in insurance litigation generally.

The estoppel claim is even more tenuous, in absence of prejudicial reliance, and again there is no precedent cited in support of a theory that a reopened investigation was barred by the policy or the actions of the defendant.

Plaintiff here fails to show substantial compliance with the Cooperation Clause, thereby relinquishing Farmers from liability, and resulting in a failure to establish a genuine issue of material fact as to her claim of breach of contract. Where as here, a claim for breach of contract fails, Missouri precedent compels that a vexatious refusal to pay claim must also fail. Chaudhri, 2019 WL 1519307, at *4; see also, Montgomery v. Allstate Property and Casualty Insurance Company, 2019 WL 718823 *4 (W.D.Mo.); quoting, BSI Constructors, Inc. v. Hartford Fire Ins. Co., 705 F.3d 330, 335 (8th Cir. 2013).

After careful review of the pleadings submitted by the parties, and on the undisputed facts, plaintiff's claims fail as a matter of law, and summary judgment will be granted in favor of Farmers.[5]

---

[5] If plaintiff has a meritorious claim considerably exceeding Farmers' offer it may seem unfortunate that a petulant refusal to cooperate fully under the circumstances defeats the claim. But the filing of suit immediately after the request cut off further negotiation and the opportunity to cooperate with the reopened investigation. The result appears required under Missouri law, as best it can be predicted, under standard practices in the processing of insurance claims.

  One may suppose that the insurer's discovery rights during litigation, including access to documents and depositions, might somewhat compensate for the breach of a Cooperation Clause. But neither plaintiff nor the case

Accordingly, it is hereby

ORDERED that plaintiff's motion to compel (Doc. 37) is DENIED as moot[6]. It is further

ORDERED that the joint motion for extension of time to extend scheduling deadlines (Doc. 41) is DENIED as moot. It is further

ORDERED that plaintiff's motion for leave to file supplemental pleadings in support of her motion to compel (Doc. 47) is DENIED as moot. It is further

ORDERED that plaintiff's motion for summary judgment (Doc. 71) is DENIED. It is further

ORDERED that defendant's motion for summary judgment (Doc. 59) is GRANTED, and the Clerk of the Court is directed to enter judgment in favor of defendant.

                                                                                    _/s/ Howard F. Sachs_
                                                                                    **HOWARD F. SACHS**
                                                                                    UNITED STATES DISTRICT JUDGE

March 18, 2020
Kansas City, Missouri

---

law suggests this as excusing a Cooperation Clause breach. If the insured had cooperated with the reassessment of the claim rather than initiating hasty litigation the opportunity for a negotiated settlement would have been preserved, and the insurer's litigation expenses might have been avoided.

[6] Plaintiff filed the motion seeking documents designated as non-discoverable by Farmers on the basis of attorney-client and/or work product privileges, and requested an order subjecting the materials to *in camera* review. The motion was granted, but prior to expiration of the discovery period, Farmers filed a motion for summary judgment – followed by plaintiff seeking similar relief. Thus, by Order dated July 1, 2019, the discovery motions were stayed pending review of the cross-motions for summary judgment. (Doc. 62).

    Thorough review of the dispositive motions has resulted in a ruling which does not include any briefing by the parties regarding the prior discovery dispute; thereby relegating the matter moot.